UNION BUILDING CO., A CORPORATION, ET AL., PROSE-
CUTORS, v. CITY OF NEWARK, A MUNICIPAL CORPO-
RATION, ET AL., RESPONDENTS.

Submitted May 5, 1942—Decided September 28, 1942.

Before Justices CASE, DONGES and COLIE.

For the prosecutors, *Hannoch & Lasser* (*Herbert J. Hannoch*) and *Harold E. Grotta*.

For the respondents, *Louis A. Fast* and *Raymond Schroeder*.

The opinion of the court was delivered by

CASE, J. The writ of *certiorari* was directed to the City of Newark, the Commissioner of Revenue and Finance and the Board of Assessment for Local Improvements of the City of Newark. It called for the certificate of cost, a resolution by the Board of Commissioners of the City of Newark referring that certificate to the Board of Assessment for Local Improvements and the proceedings by the said Board of Assessment with respect to the assessment for benefits resulting from an improvement known as "the opening of Raymond Boulevard." It is prosecuted by certain of the landowners who have been assessed for benefits. Notwithstanding the

wide field covered by the proofs and accompanying exhibits, the review is of those matters specifically enumerated above.

Prosecutors · marshal their argument under three points: First, Raymond Boulevard is the name applied to the roof of the City Railway and is not a public street or highway for which an assessment for benefits may be levied; second, the assessment commissioners were without jurisdiction under the statute to make assessments for benefits; and third, substantial sums of money were improperly included within the cost of the improvement.

We are not impressed by the allegation that Raymond Boulevard is not a public street or highway. The fact that the street was superimposed above a cut that is used for the City Railway presents incidents that have a bearing upon the controversy. It does not, in our opinion, alter the fact that Raymond Boulevard is a highway important to the City of Newark in handling traffic and with an identity that is complementary to, but nevertheless to be distinguished from, the railway over which it exists; and we think that it came within the purview of legislation for the laying out, opening or establishing of a new street or public highway (*Pamph. L.* 1917, *ch.* 152, *art. XX,* § 1(a); *R. S.* 40:56-1). Further, the ordinance which was adopted July 13th, 1932, directed that Raymond Boulevard should be "opened as a public street or highway" and that the improvement should "be undertaken as a local improvement and the cost thereof shall be assessed against the property peculiarly benefited;" and prosecutors are, we consider, in gross *laches* in waiting until this late day, after standing by while the improvement, of great benefit to their lands, was being completed, to make their attack upon the ordinance. For the matter of the first point is an attack upon the ordinance. *Hillside Land Co.* v. *North Bergen Township,* 112 *N. J. L.* 576. Finally, we think that the point is a digression from the review which the court undertook to make.

The City of Newark, acting under chapter 229, *Pamph. L.* 1924, and its own ordinance adopted October 21st, 1924, acquired so much of the canal lands of the Morris Canal and

Banking Company as lay within the city limits. By a series of ordinances, the first of which was passed on January 29th, 1930, the city provided for the construction of an electric railway—in part, at least, a subway—along the canal bed, extending from the then proposed new railroad station north of Market Street to the boundary line between the City of Newark and the Town of Dover. The improvement was undertaken as a *general* improvement, no part of the cost to be specially assessed against property specially benefited by the improvement. A large volume of bonds was sold to finance the enterprise. The city proceeded to acquire additional lands which were deemed necessary for that purpose—some by ordinary purchase, some by condemnation. After the foregoing steps had been taken the city passed the ordinance of July 13th, 1932, providing for the opening of Raymond Boulevard. The last mentioned work, in contrast with the City Railway, was to be undertaken as a *local* improvement, the cost thereof to be assessed against property benefited thereby, except as to $300,000 which the city undertook to pay from general tax moneys.

Section 14, article XX, chapter 152, *Pamph. L.* 1917 (the Municipalities Act), was in effect when the city commission acted in this case. It provided:

"Upon the completion of any local improvement, the board or body in charge thereof shall immediately notify the officer or board in the municipality that is charged with the duty of making the assessment for benefits, and request that a proper assessment be made on any lands or real estate that may have been benefited or increased in value by such improvement. The board in charge of such improvement shall furnish to the assessing officer or board a statement showing in detail the cost of such improvement, which shall include the cost of any land, real estate or right of way purchased or condemned in connection with the improvement, and also the cost of advertising, financing and inspecting the same and engineering expenses."

It is the contention of the prosecutors that no such detailed statement of costs was certified and that if the paper which

appears in the record as such an itemization was in fact filed (the prosecutors say that it was not filed) nevertheless the matter therein contained did not embrace such a detailed statement of costs as to constitute a compliance with the statute. The respondents submitted no testimony and take, throughout, the technical position that the burden is upon the prosecutors to prove their allegations and that they have not done so.

The return to the writ, which comes to us certified by the chief clerk of the Board of Assessment, contains in sequence (1) a letter (without date) from A. K. Brady, acting auditor of accounts, to the Board of Commissioners submitting "the statement annexed," (2) a resolution passed by the Board of Commissioners of the City of Newark directing that the auditor's "report and declaration of costs" be referred to the Board of Commissioners of Assessments for Local Improvements, (3) a tabulation entitled "Total Cost of Opening Raymond Boulevard, Broad, Warren and Wickliffe Streets." The papers just referred to as (1) and (2) are integrated, are given a common title and are certified by the city clerk. The paper designated as (3) has no such certification and has no internal matter which integrates it with (1) and (2). Beyond sequence in the order of printing we find nothing to give official *status* to the statement of cost except the certificate of the chief clerk of the Board of Assessment listing the matters returned by him with the writ and this reference is to "a certain *alleged* certificate of cost of improvement," &c. The attorney for the prosecutors testified that on February 10th, 1939, he examined the original resolution of June 10th, 1936, in the city clerk's vault and obtained a certified copy of that resolution and that no detailed statement of cost was attached; that on the next day he obtained a second certified copy of the resolution and that again no detailed statement of the cost was attached. The return of a municipal commission has not the binding effect of the return from an inferior court, *Oritani Field Club* v. *Hackensack*, 12 *N. J. Mis. R.* 490; nevertheless we think that the fair intendment of the return by the chief clerk is that the state-

ment came regularly into the hands of the Board of Assessment along with the letter of the acting auditor and the resolution of the City Commissioners and as a part thereof, and that lacking more definite proof of invalidity than has been produced we should, and consequently we do, impute regularity to the statement as an accompaniment of the Brady letter and the Commissioners' resolution. We accept as a fact that the tabulation was made and referred as it purports to have been.

The question remains, however, whether the tabulation is a statement showing in detail the cost of the improvement including the cost of any land, real estate or right of way purchased or condemned. The statement shows that the total cost of opening Raymond Boulevard was $527,440.28, of which amount the major items are one of land $81,120, another of land $347,132.66 and a third of interest $90,389.02. These items aggregate more than $518,000 of the total cost of $527,000. The only information given by the filed statement regarding the land costs is as follows:

```
1932—
April 8—Land Purchased by City. .$266,386.00
         Less amount charged to
            City Railway ........ 185,266.00
                                   ———————  $81,120.00
1933—
Dec. 1—Land Purchased by City. .$688,632.66
         Less Amount Charged to
            City Railway ....... . 341,500.00
                                   ———————  347,132.66·
```

An examination made at the instance of the prosecutors (under permission granted by the court in these proceedings) disclosed that the amount of $81,120 set up in the tabulation under date of April 8th, 1932, was not a detailed item of cost, but was a result reached by a rather complicated computation which may be best shown by the following tabulation:

|  | Total | Charged City Railway | Raymond Boulevard | Charged to City |
|---|---|---|---|---|
| John and Mary Mc-Lean | $8,500 | $2,620 |  | $5,880 |
| Wilkinson-Solomon, Inc. | 49,000 | 24,500 | 24,500 |  |
| Louis Beller | 85,000 | 32,700 | 17,450 | 34,850 |
| Est. Ralph San Giovanni | 16,500 | 8,660 | 4,770 | 3,070 |
| L. Steiner, J. Augenblick and H. J. Hannoch | 107,386 | 60,600 | 34,400 | 12,386 |
| Sub-Total | $266,386 | $129,080 | $81,120 | $56,186 |

By way of further and illustrative explanation the property referred to as that of "L. Steiner, J. Augenblick and J. H. Hannoch" appears to have been located at 194-196 Washington Street. The property was acquired by condemnation before the adoption of the ordinance for the opening of Raymond Boulevard to be used for the purpose of a city railway and was conveyed to the city upon the payment of the price fixed by the Commissioners of Condemnation by deed dated December 5th, 1931. According to the city's records the money was paid on December 11th, 1931, which obviously was also before the adoption of the Raymond Boulevard ordinance and the transaction is entered in the city's books in the "City Railway Construction Account." The property of Wilkinson-Solomon, Inc., was likewise acquired by condemnation, title taken on September 2d, 1931, and the cost entered in the "City Railway Construction Account." The Louis Beller property was probably acquired by purchase. The deed was dated April 24th, 1931, and the purchase price paid on that day and entered in the "City Railway Construction Account." The property of Ralph San Giovanni seems also to have been acquired by purchase. The deeds were dated in February, 1932, the purchase price paid on April 8th, 1932, and the entry made in the "City Railway Construction Account." It is a necessary inference from the proofs that no part of the original outlay for the several

properties we have just named was occasioned by or expended for the opening of Raymond Boulevard. This is not to intimate that the division of costs was not lawful; that question is not properly before us. It does have an important bearing upon whether or not the statement shows in detail the cost of the real estate; and that question is up for decision. Had the item of real estate costs been detailed the legality of the division might now have been the litigated question. Thus, the tabulation last above set forth, itself an explanation of what is almost a blind item in the statement, needs itself to be explained in the light of the facts just stated; as for instance the item of Steiner, Augenblick and Hannoch which, at a total cost of $107,386 for lands taken by condemnation for the City Railway, was by the auditor of accounts apportioned $60,600 against the City Railway, $34,400 against the Raymond Boulevard and $12,386 to the city's general expense, thus being the figure of $34,400 in a column which added to several other items, likewise so arrived at, makes a total of $81,120, the line item shown in the statement. It is charged by the prosecutors that this procedure, which it calls a juggling of accounts, was done with the purpose of shifting a part of the cost of the City Railway, a *general* improvement, over to the account of Raymond Boulevard, a *local* improvement, and of thus imposing an unjust burden upon the few properties which as specially benefited by the Raymond Boulevard improvement were assessed with a large part of the cost of the last enterprise; and that the lack of information shown on the statement was resorted to as a means of concealing the detailed facts to which the prosecutors and other persons to be visited with the expense were entitled to know.

Without giving effect to the sinister motive charged by prosecutors, we think that the statement obviously did not meet the statutory requirement that the costs should appear in detail. The power of a municipality in the matter of street improvements is a specially delegated power, and the acts of a municipality are legal only when they strictly follow the procedure laid down by the legislature. *Gross* v. *Hague,* 99 *N. J. L.* 457, 461.

The details of the $347,132.66 item are not given.

The interest item is likewise without detail. It is as follows: "Interest to Feb. 1, 1937 $90,389.02." Interest on what? The figure is large. Prosecutors argue that interest of any kind and of all kinds could not possibly reach that figure unless there was included therein either directly or by indirection interest on the $300,000 which was the city's contribution to be paid from general taxation and therefore not a charge either as to principal or interest against properties specially benefited. We express no opinion upon whether interest on that $300,000 was chargeable to local assessment, but we think that the persons subject to assessment are entitled to know the fact as to whether such a charge is being made so that they may, if they wish, address themselves to the legality of it.

The history of the improvement, the relationship which the Boulevard improvement bears to the City Railway and the difference in methods of taxation to meet the cost of the City Railway, a general improvement, and of the Raymond Boulevard, a local improvement, emphasize and give point to the statutory requirement that the statement of cost shall be in detail. It is certain that the legislative purpose was not to confine the paper to a certification of the gross amount to be laid by the Board of Assessment against the several properties benefited; else why the showing in detail? It must be that there was comprehended a purpose to inform those who had a right to know concerning the details of the cost of the improvement. What constitutes information in one case may be very uninforming in another. The statement in this case did not carry substantial information regarding the major costs of the improvement.

Other matters presented by prosecutors need not be now considered.

We find that the paper entitled "Total Cost of Opening Raymond Boulevard" was not such a statement of cost as the statute required and that therefore the assessment commissioners were without jurisdiction, under the statute, to make assessments for benefits. The assessment proceedings will, therefore, be set aside; with costs.